IN THE SUPREME COURT OF THE STATE OF DELAWARE

WILLOW IRENE ROBINSON,[1]      §
     § No. 561, 2014
   Respondent Below-      §
   Appellant,      § Court Below: Family Court
     § of the State of Delaware,
   v.      § in and for New Castle County
     § File Nos. 13-12-01TN,
DIVISION OF FAMILY SERVICES,      § 13-12-02TN, and 13-12-03TN
     § Petition Nos. 13-36852,
   Petitioner Below-      § 13-36857, and 13-37063
   Appellee.      §

Submitted: March 19, 2015
Decided: April 22, 2015

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices.

**O R D E R**

This 22nd day of April 2015, upon consideration of the appellant's opening brief filed under Supreme Court Rule 26.1(c), her counsel's motion to withdraw, and the response filed by the Division of Family Services ("DFS"), it appears to the Court that:

(1) The respondent-appellant, Willow Robinson ("Mother"), filed this appeal from the Family Court's order, dated August 27, 2014, which terminated her parental rights with respect to her three minor children, Alexander (born December 1, 2005), Martinique (born May 7, 2008), and

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d). The Court also uses pseudonyms for the children throughout this Order.

Terrance (born July 2, 2010).[2]  Mother's appointed counsel on appeal has filed a brief and motion to withdraw under Rule 26.1(c).  Counsel asserts that he has made a conscientious review of the record and the law and can find no arguable grounds for appeal.  Despite the opportunity to do so, Mother has not raised any points for the Court's consideration on appeal.  DFS has filed a response to the brief and has moved to affirm the Family Court's judgment.

(2)  On September 17, 2012, DFS filed an emergency petition for temporary custody of Alexander and Martinique after they were found wandering in the City of Wilmington unsupervised and were locked out of their home.  The police found Mother inside the home under the influence of embalming fluid.  She was arrested and charged with Endangering the Welfare of a Child.  On September 26, 2012, DFS filed an emergency petition for custody of Terrance, who was then living with his paternal grandfather, because DFS was concerned that Mother might seek to retrieve Terrance from his grandfather.  DFS alleged that the children were dependent and neglected in Mother's care.  Counsel was appointed to represent Mother, and a Court Appointed Special Advocate ("CASA") was appointed to represent the children.  On November 13, 2012, the Family

---

[2] The Family Court's order also terminated the parental rights of the children's respective fathers.  No appeal was filed from the termination of the fathers' parental rights.

Court held a consolidated adjudicatory and dispositional hearing at which it found all three children remained dependent under 10 *Del. C.* § 901(8) because of Mother's ongoing substance abuse. Custody of the children was continued with DFS.

(3) The Family Court approved Mother's case plan, which required Mother to maintain stable finances and the ability to support her children, maintain appropriate and stable housing, choose appropriate caregivers, complete a parenting class and cooperate with her parent aide, avoid domestic violence and cooperate with a domestic violence liaison, and complete a substance abuse program successfully. In April 2013, the Family Court held a consolidated guardianship and review hearing.[3] After considering the testimony, the Family Court concluded that Mother had not made substantial progress on her case plan because, although she was working, she was facing the threat of eviction and was continuing to use drugs. The court thus found that the children remained dependent and that custody should remain with DFS.

---

[3] A maternal aunt and a maternal uncle had filed separate petitions for guardianship of the children. The uncle's petition was dismissed after he failed to appear for the hearing. The aunt's petition was denied after she admitted that she had been substantiated for physical abuse of her own daughter in 2012, that she was legally blind, that she had cared for Mother's children in 2013 but had returned them to Mother even though she knew Mother was abusing drugs, and that she herself used marijuana.

(4) On August 7, 2013, DFS filed a motion to change the goal from reunification to termination of parental rights ("TPR") because Mother had not completed her case plan and because the children were doing well in their placements. Mother, through her appointed counsel, opposed DFS' motion to change the goal. The Family Court held a permanency review hearing on August 16, 2013. At that time, the Family Court found that Mother was working two jobs, had tested negative for PCP use, had completed a parenting class, and reported a good relationship with her parent aid. Notwithstanding these positive developments, the Family Court also found Mother's housing situation remained precarious because her landlord had obtained a $5000 judgment against her, her work schedule interfered with her ability to obtain necessary drug treatment as she continued to test positive for marijuana use, and she discontinued domestic violence counseling after one session. The Family Court, however, did not rule on DFS' motion to change the goal at that time.

(5) Instead, on December 3, 2013, the Family Court held another consolidated permanency review and guardianship hearing.[4] At the time of the hearing, Mother was incarcerated on a violation of probation but expected to be released on December 17, 2013, and to return to one of her

[4] The third guardianship petition was filed by Terrance's paternal grandmother, who had a relationship with all three children.

4

two jobs.[5]  The record further reflected that Mother had not completed domestic violence counseling, which was required, and had been discharged as unsuccessful from her drug treatment program for missing group and individual sessions.  She also lacked appropriate, stable housing because she was living with her boyfriend, in violation of the terms of her probation, in a one-bedroom apartment that was too small to accommodate her three children.  Mother asked that the petition for guardianship be granted.  Both DFS and the CASA opposed the guardianship petition because the proposed guardian was unemployed and was living in her own sister's house where she did not have her own room and slept on the couch.  At the conclusion of the hearing, the Family Court denied the petition for guardianship and granted DFS's motion to change the goal to termination but required DFS to continue to engage in concurrent planning for reunification with Mother.

(6)  On May 6, 2014, the Family Court held a consolidated permanency review and TPR hearing.  The Court heard testimony as to everyone except Martinique's father, who had not received proper service.  At the request of Mother's counsel, the Family Court indicated that it would reopen the record as to all three children if Martinique's father appeared at the rescheduled hearing, which was continued until August 11, 2014;

---

[5] Mother had been fired from her second job after taking her supervisor's cell phone.

5

however, if Martinique's father did not appear, then the record would be deemed complete as to all three children. Martinique's father did not appear at the August 11 hearing, and the Family Court closed the record.

(7) In its final decision dated August 27, 2014, the Family Court carefully detailed the testimony of all of the witnesses, including: Mother; a clinical supervisor at Horizon House where Mother was sent for drug treatment; a DFS investigator; a drug treatment counselor from Brandywine Counseling; a DFS treatment worker; a parent aide; a domestic violence counselor; a counselor from the school attended by Alexander and Martinique; a DFS permanency/adoption worker; a supervisor from Mother's workplace; and the children's CASA. After reviewing all of the evidence presented, the Family Court found that Mother had completed only one of the required elements of her DFS case plan, which had been entered on June 15, 2012. Mother had failed to maintain stable, appropriate housing, had failed to obtain adequate employment in order to financially support her children, had failed to participate in domestic violence counseling, and had failed to complete drug treatment.

(8) Ultimately, the Family Court found clear and convincing evidence that: (i) there was a statutory basis for termination because the Mother had failed to plan adequately for the children's emotional and

6

physical needs; (ii) DFS had made reasonable efforts to reunify Mother with the children; and (iii) termination of Mother's parental rights was in the children's best interests.[6] The children had been in DFS' care for more than one year.[7] Notwithstanding Mother's expressed desire to have her children returned to her, the Family Court concluded that all of the remaining, applicable best interest factors weighed in favor of terminating the Mother's parental rights.[8]

(9)    This Court's review of a Family Court decision to terminate parental rights entails consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[9] To the extent that the Family Court's rulings of law are implicated, our review is *de novo*.[10] To the extent that the issues on appeal implicate rulings of fact, we conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[11] If the trial

---

[6] DEL. CODE ANN. tit. 13, § 1103(a)(5) (2009).

[7] *Id.* § 1103(a)(5)a1.

[8] *Id.* § 722 (the Family Court found domestic violence, § 722(a)(7), to be an inapplicable factor to its analysis).

[9] *Wilson v. Div. of Family Serv.*, 988 A.2d 435, 439-40 (Del. 2010).

[10] *Id.* at 440.

[11] *Powell v. Dep't of Serv. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).

judge has correctly applied the law, our review is limited to abuse of discretion.[12]

(10)   In reviewing a petition for termination of parental rights, the Family Court must employ a two-step analysis.[13]   First, the court must determine, by clear and convincing evidence, that a statutory basis exists for termination.[14]   Second, the court must determine, by clear and convincing evidence, that termination of parental rights is in the child's best interests.[15]

(11)   In this case, we have reviewed the parties' positions and the record below very carefully.  We conclude that there is ample evidence on the record to support the Family Court's termination of Mother's parental rights on the statutory basis that she failed to plan for the children adequately and because termination was clearly in the children's best interests.  We find no abuse of discretion in the Family Court's factual findings and no error in its application of the law to the facts.  Accordingly, the judgment below shall be affirmed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

---

[12] *Id.*

[13] DEL. CODE ANN. tit. 13, § 1103(a) (2009).

[14] *Shepherd v. Clemens*, 752 A.2d 533, 537 (Del. 2000).

[15] *Id.*

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice